The third argument is Case 25-2632, Eastern Arkansas, Joseph Falasco v. USAA Casualty Insurance Company. All right, Mr. Quattlebaum, we'll hear from you first. Thank you. May it please the Court. My name is Steve Quattlebaum and I represent Appellant Joseph Falasco. We appeal from the order of the trial court granting summary judgment on the claim of bad faith and seek remand for further proceedings and trial. The standard of review for an order granting summary judgment is de novo. First, let us consider the applicable law which can be stated succinctly. If a company engages in dishonest, oppressive, or malicious conduct in order to avoid a just obligation to the insured, it is bad faith. Each type of conduct can support a claim of bad faith. Further, bad faith may be inferred from the conduct and the surrounding circumstances. The Court must view all facts and make all reasonable inferences in favor of the non-moving party in evaluating whether genuine issues of material facts support the claim of bad faith that exists in the record. Finally, deciding between bad judgment and bad faith is a material fact question for the jury. The error of the trial court below is evident in five steps. There were affirmative acts of bad faith by USAA. Unquestionably, there were many misrepresentations of material facts. Judge Miller noted that in his opinion. He said that the record was riddled with misrepresentations. As such, there are necessarily genuine issues of material fact. Were the misrepresentations intentional and thus dishonest? Or were they innocent mistakes as USAA claims? Were they off-the-cuff remarks or strategic leveraging of the insured? These questions are genuine issues of material fact. The questions of intent and motive must be left to the jury and cannot be made by the Court on summary judgment. The inferences must be viewed in favor of the non-moving party. The fifth step, no authority under the law of Arkansas holds that reliance by an insurance company on a third-party valuation immunizes the company from the claim of bad faith arising from affirmative misconduct. Not Tillman, not Sims, not any case in Arkansas stands for that proposition. The law should not and does not provide a blanket per se defense and therein lies the error. Under Tillman and Sims, there was no affirmative misconduct. Here, the Court found affirmative misconduct. It found misrepresentations, but it excuses the affirmative misconduct on the notion that somehow relying on a third party for evaluation gives immunity to the insurance company for its own bad faith conduct. Do you think that's what the Court really did? Or do you think the Court was just saying that whatever misrepresentation occurred here was not in fact dishonest or malicious or oppressive and that it didn't meet the scienter requirement under Arkansas law? I mean, because I think that's how I read it, is that there were negligent misrepresentations and negligent misrepresentations are just that, negligent or even grossly negligent, but they're not dishonest. And so that's the point that I thought I saw there, but maybe I was reading too much into it. Well, I appreciate the question, Judge Erickson, because that requires a weighing of those misrepresentations. It requires the Court to look into the mind of Ms. Adams, for example, and determine when she said that there was an appraisal provision in the policy and it required the insured at the insured's expense to go get an appraisal to challenge their valuation, was that a negligent statement? Was it an intentional misrepresentation in order to have a strategic advantage? That is a question of fact. I follow that, but the problem is the scienter requires, under Arkansas laws, I understand it, some intent to do harm or some truly oppressive or outrageous intent. No, I disagree.  Yes, I think you are wrong. If you look at the model jury instruction, it provides a clear explanation. Right. I understand that, but our problem is as I look at it, our precedence, we look mostly at case law as opposed to the model jury instruction. We may look at our case law and the Arkansas Supreme Court case law and have a different view of that, which is not what I was looking at. I understand that the jury instruction says what it says, but is that the governing law as opposed to what the Arkansas Supreme Court said? Okay, set aside the jury instruction. Look at EDGIN, E-D-G-I-N, cited in our case is the Arkansas Appellate Court, where the court made it perfectly clear that it is dishonest, oppressive, or malicious, and then what the jury instruction helps us with is they take out the word malicious and they insert hatred, ill will, spirit of revenge, because that's the definition of malicious, which applies to if there was malice, but dishonesty doesn't require that, and that's the confusion that arises. There's a lot of cases under Arkansas law where that statement of there must be a spirit of ill will, there must be a hatred or revenge spirit is included in the language, but it does not modify dishonesty. If the insurance company is affirmatively dishonest in its dealings with the insured, it is committing bad faith. Well, counsel, couldn't the jury infer malice from dishonesty as well? Oh, of course, it could be inferred if it needed to be, but if the jury finds that the statement was dishonest, that is that it was not just wrong, but wrong for a reason, it was either the intent of the insurance company to fool the insured or the intent of the insurance company to leverage to get a better deal on its settlement. If that is the case, that is bad faith, but those are questions to be left to the jury. The judge either apparently said the dishonesty that I find riddled through this record is not dishonest, it's a mistake, and then the court has invaded the province of the jury, or the court said, yes, but under Tillman and Sims, if you rely upon a third-party evaluator, you're excused from your mistakes. You're excused from your dishonesty. You're excused from your affirmative misconduct. That's not the law. There is no case that says that, and it can't be, and shouldn't be. We shouldn't give an insurance company a license to go hire a third-party evaluation and then say, I can lie, I can make dishonest statements, I can engage in bad faith conduct, I can attempt to impress because now I have a blanket defense, and there's nothing in Arkansas law that says if there's a reliance on a third-party, you are then forgiven, you have a license to engage in bad conduct. And that's what we're left with in this case, if you take the point that there was dishonesty. So let me run through a list, and taking everything in the light most favorable to Mr. Felasco, which has to be done, let's look at the affirmative dishonesty. They said the policy required an appraisal. Not true. In fact, contrary to Arkansas law, said the appraisal had to be at the insurance expense. Not true. Not according to Arkansas law. Ms. Adams said that she wasn't even looking at the policy, but then if you look at her notes, she was actually reviewing the policy. Mr. Felasco asked for a copy of the policy. She said she couldn't provide it because she didn't have it. But if you look at her notes, she's reviewing it. That's dishonest. Why was she doing that? Because if she revealed it, she would reveal that there was no such provision in the policy. She denied the ability to provide it. Stated, you're under investigation for arson and fraud, which they now claim in their brief, oh, that was just a fire investigation. But the record at JA 543, Mr. Felasco said they told him he was under investigation for arson and fraud. Why? There was no good faith basis for arson and fraud. Was it to leverage, or was it not to leverage? The question of will you provide the undisputed amount, the answer was under arbitration law, you have to engage in a settlement to get the undisputed amount. That was just wholly made up, manufactured. There is no arbitration law that's applicable to this, and they can't cite anything. In their brief, they refer to that as an off-the-cuff statement. It's a dishonest statement. It's wrong, and was it wrong intentionally because they were trying to leverage Mr. Felasco into accepting an undisputed amount as a full and final settlement, or was it wrong just because the person made a mistake? That's a question for the jury. Here, the court resolved all those questions against Mr. Felasco, or provided a license to engage in dishonesty because they relied on a third-party evaluation. Same thing on the question about comparables. Mr. Felasco provided comparables that he thought were more appropriate. They said those are unavailable, can't be viewed because you got them off of a website called Bring a Trailer. But there is no evidence that the third-party evaluator said that, and then after the lawsuit was filed, it was their expert, their arbitrator, I mean their appraiser, who went to Bring a Trailer. So clearly, that was again either a mistake or it was a lie, and that's a question to be left for the jury. This case is different, and I see that I'm getting into my rebuttal time, but this case is different from Tillman and Sims. It's different from the other cases that are cited. It's different from Unum, entirely different from Unum, but because of the affirmative misconduct. An affirmance of this case will give insurance companies a blanket defense that if they're relying on a third-party, regardless of whether it's accurate or not, they have a defense to then go forward and engage in dishonesty. And I think that's the problem with this case. That's why we're here today. Thank you, Your Honor. Very well. Thank you for your argument. Mr. Eccleberry, we'll hear from you. Good morning, Your Honors. Thank you. May it please the Court, Roger Eccleberry for Appellant USA Casualty Insurance Company. Your Honor, I'll first address the standard, as Judge Erickson stated. Arkansas jury instructions in a Western District of Arkansas decision and a single Arkansas appellate decision do not override this circuit's precedent or the Arkansas Supreme Court's precedent. The standard is rigorous, and the dishonest, malicious, or oppressive conduct must be carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge. That is not present in this case. The USAA appellant has never made the argument, and the District Court did not hold, that reliance upon a third party absolves all conduct. It's conflating issues. Reliance on third party for the value, even if that value is wrong, is not bad faith. My understanding is that the duty of good faith is non-delicable. Isn't that what is happening here? No, Your Honor. There's no evidence that CCC, which is the vendor we're talking about, or USAA believe that there was anything wrong with the comparable vehicles used to determine the value. One of them was not even running. There's no evidence that that was known to CCC or USAA at the time the initial valuation was made. Well, it wasn't known to them because they delegated that duty to a third party. No, I'm sorry. I'm following, Your Honor. I'm saying that there's no evidence that the third party was aware at the time of the valuation because, as Appellant pointed out, the CCC report, the valuation report, did not include the advertisement. They list the vehicles. They don't have copies of the advertisements. And I'll point out, Your Honor, that the document that plaintiff relies on, excuse me, Appellant relies on for that valuation that says it's not running is Joint Appendix 090. There's a date on that document, Your Honor, and that date is October 3rd, 2023. That's four days after the case was filed. That also corresponds with JA 0088-89, which is an October 3 email from Appellant to USAA stating that that vehicle is not running. There's no record evidence that the advertisement, which is JA 0940, was ever provided to USAA prior to discovery. So during the claims administration, it was never provided. Now, in response to summary judgment, Appellant attached an affidavit stating that he informed the adjuster at some point over the telephone that one of the comps wasn't running, even assuming that's true. Again, there's no record evidence of anything before October 3rd, four days after the suit was filed. But even assuming that they were told over the phone, there's no evidence that USAA just blindly accepted CCC's valuation. Appellant submitted his own comparables, and those were sent to the dispute team for evaluation. CCC will not accept, and this is documented in the adjuster's notes, the dispute team said CCC will not accept comparable vehicles from the auction site, bring a trailer. Now, counsel just stated that there's no evidence that that was ever discussed with CCC. Two points. First, USAA's corporate representative testified that USAA uses CCC exclusively to value cars. So they've seen CCC reviews and disputes before. It's not unreasonable that they would have known from past experience that CCC doesn't inspect them. CCC-1, this was unrefuted, is the leading car valuation vendor in the country. Sixty percent of the industry uses this. It's in use in all 50 states. It's been approved by numerous regulators and state statutes. But I'll refer the court to JA-0092. This is the adjuster's claim note. OBC-CCC-1. OBC stands for outbound call. OBC-CCC-1. She's talking to CCC. Based on age, limited market, up and down. This was a 49-year-old car. This wasn't a 2022 F-150 where there's hundreds of thousands of them. This is a 1974 Porsche 911. Reviewed comps with CCC-1, or excuse me, CCC. NI comps, two from bring a trailer, is not eligible, and one was showroom quality and was needing more comps. It was discussed with CCC, even if they didn't already know that CCC won't accept comps from bring a trailer. Later it says, just blindly relied on it. Tried to do another search for same year 911 with CCC-1 since model Targa. Remember, Appellant's two complaints was one, complained that the engine wasn't running. Well, his initial complaint was it was the wrong vehicle, but he later realized that he was looking at the wrong vehicle. And two, he claimed the Targa is not sufficiently comparable to a 911 Carrera to use as a comp. Offered no support of that, either to USAID during the claims adjustment, or even in the litigation. That's his opinion. He's entitled to it. But that doesn't mean that CCC is wrong that it is. But still, tried to do another search for same 1911 with CCC-1 since model Targa. No hits. But reached out to evaluator, sent name, insured email, follow-up pending rerun comps. So here's what's funny. They complained about the first comps. Said we blindly relied on CCC, and we just kept relying on those first comps. Then he complained that they tried to find new ones. Refer the court to JA-0092. NI email, that's named insured email, resend back to CCC-1 to rerun comps, stating was told all we can do, and now feels misled that we are attempting another eval to see if new vehicles in the area. So he's complaining that they're looking for different ones after he complained about the first ones. The use of CCC-1 does not give a blanket. It's not going to bring down the insurance industry and do whatever they want. The valuation, the point of reference to the CCC, was the valuation was reasonable. Neither CCC nor USAA had any reason to doubt the value. He was invited to provide comps that CCC-1 would accept. He refused. He started at $100,000 before valuation was ever done. He told the field adjuster, thought the car was worth $100,000, threw out, never wavered. Even though his comps were showroom quality, and he couldn't provide an explanation for the difference between his comps and his vehicle. How do you get to that value? Holistically, you look at the whole car. He said he understood that appraisers like to do that, but he doesn't think it can be done. Then he complained that CCC-1 wouldn't use his showroom ready comps and applied a dollar adjustment to get to his value. Counsel, I'd like to focus on the standard under Arkansas law for bad feet. Yes, Your Honor. Viewed in the light most favorable to the plaintiff, there are at least six instances of potential lies that were told to him in the record. Why couldn't the jury infer malice? Because the court makes a threshold determination, Your Honor. As this court said in Howard, all reasonable inferences must be drawn in the non-moving party's side. But the court need not accept unreasonable inferences or mere speculation. And that's all appellant has. One, and we can take the… He was told that arbitration law did something that it absolutely doesn't do. I understand, Your Honor. And that is… What was the basis for that representation? If you look, one, again, under Arkansas law, if it's mistaken, even if it's wrong, that's not bad faith. It was a very specific representation. Yes, Your Honor. Context matters. This is in the same call, and I'll refer the court to JA0093, the claim note that reflects her making that statement. In the same call, the appellant advised her that he'd filed suit, refused to provide information about the lawsuit or his lawyer, and previously in the claims adjustment process, he had reminded her, I'm a lawyer. And on a different call, I'm a lawyer and I have my counsel on the phone with me. So who's trying to intimidate whom? What about the representation that he was under investigation for arson and fraud? That seems rather intimidating. First, Your Honor, there's no record evidence of that other than Mr. Appellant's testimony, but telling someone they're under investigation is not the same as accusing. And I'll take that, if I may just briefly, Your Honor, on arbitration law. There's contemporaneous claim notes where she states, advised this is the claim process and not withholding anything. And then there's a separate. She attempted to correct her statement the same day, this is JA0089, where she sent a letter stating all you need or what you need is the title procurement process. And then she testified in her declaration when she's no longer an employee of USAA that she was unfamiliar with the process for resolving claims after a lawsuit was filed. He filed suit, but she didn't know until she was on the call with him. That was four days after he'd filed suit. She had no idea. So she's on the phone with a lawyer, just found out it's in litigation, and she's unfamiliar with the process after litigation is filed. Now, it's not a reasonable inference to think that she's trying to fool a lawyer about nonsensical, as they describe it, rightly so, arbitration law. She was unfamiliar with the process, and it was corrected that same day. But with respect to the, I'm sorry? You know, one of the issues just generally on the question of dishonesty that's been argued, I think, is on one hand you have the judge who's essentially said that there certainly were mistakes made, misrepresentations made, that there were a lot of them made, and that there's evidence of negligence and perhaps even aggravated negligence of some sort. But as a matter of law, the judge said it doesn't rise to the level of dishonesty, right? Yes, Your Honor. That's where the judge is at. The argument is, well, in order for the judge to say it doesn't rise to the level of dishonesty, the judge has to weigh the evidence and has to make credibility determinations and has to make determinations as to, you know, the questions that are just ordinary left to the jury. Why are they wrong on that point? Because, Your Honor, again, the court has to make threshold determinations as to whether an inference is reasonable or not. And regardless of the district court, it's de novo review, so this court can affirm on any basis it's supported by the record. But going back to the arson investigation, if I may, Your Honor, Pelham was not accused of fraud. He testified he was told he was being investigated for arson. Even if that's true, investigation is not accusation. And the statutes that they cite, the first says, a person engaged in the business of insurance having knowledge or a reasonable belief that a farce on the insurance act is being, will be, or has been committed shall provide to the insurance commissioner notice. The other states, any insurer having reason to believe that a fire loss in which it has an interest may be of other than accidental cause shall notify in writing an authorized agency of the finding. Webster's defines to believe as to consider to be true or honest. Webster's defines finding as the results of an investigation, usually in plural. Now, Pelham admitted in his deposition that it's unusual for a car to spontaneously combust. The combustion is supposed to stay inside the cylinders, not throughout the passenger compartment in the engine. You have an unknown cause of fire. Anytime there's an unknown cause, arson is a possibility. They investigated it. They determined it was accidental. They made an offer within 32 days. That's well under the standard required by law in Arkansas is 45 days. This is not Keaton, where the adjuster accused or threatened criminal prosecution, admitted to lying about having viewed video evidence, and then admitted that he was aware of the reporting statute and never did it. Nor is this like Thompson, where the insurer, and also in Keaton, they denied coverage. Here, they granted coverage and made an offer. In Keaton, after they approved coverage and they make an offer, and the insurer wants more money, then they make allegations of fraud. And then they don't report it to the Arkansas Insurance Department until after the insurance department reached out three separate times asking if they had made a report under the statute. That didn't happen here. They conducted an investigation because you have an unknown cause of fire. They determined it was accidental. They approved coverage, and they made an offer. The same goes, Your Honor, with the, you have to look at the context when you look at the appraisal provision. There are contemporaneous claim notes that appellants themselves cite that show that she believed the policy had an arbitration clause. She believed there were only two, Arkansas and Louisiana, that did not, is what she found out. She believed they all did. JA-01, sorry, JA-1070, claim note from the adjuster. Verbiage not in policy that I can find. There would be no reason for her to look if she knew when she made the statement that it's not in there. Also, the claim about her not having access to the policy. If you actually read the notes, that's not exactly what she said. JA-0086-A7, I don't have access and was going to send you where in the contract to look, but it is actually not in your contract. What she's referring to is, in the same note, I reached out to the dispute team, and this is to Mr. Flasco, and it looks like they were unaware that for Arkansas and Louisiana, auto contract do not carry appraisal clause. The policy team can provide you a copy of the auto contract. He asked for a copy of the original, complete policy. She didn't say she couldn't view the terms of his contract. She said she didn't have access to that, but she told him where he could get it. And, JA-0082, from appellant, I was able to call back and get somebody to send me the policy. He had it the same day. That does not support, Your Honor, a reasonable inference. This was a disputed claim, Your Honor. This was about claim valuation. If I may briefly, because I see my time is about to expire. As Tillman said, pardon me, Your Honor? Go ahead. There can be no bad faith when there is a legitimate dispute for trial. This was a dispute about valuation. Very well. Sotheby's valued it at $65,000. JA-0133. Appellant's expert witness at $50,000. JA-0191. And the district court expressly found USA's expert to be qualified and well-versed in classic cars. The plaintiff said it was $100,000. Your time has expired. Thank you, Your Honor. Thank you for your argument. We'll hear rebuttal from Mr. Qualadon. Thank you, Your Honor. This is not an appeal based on the difference in valuation. Much of what we just heard was about a difference in valuation. This is an appeal based on the granting of summary judgment in a situation where there were affirmative misstatements, where there were clear inaccuracies stated by the insurance company. What's the line between when you have to have a trial over an incompetent phone representative versus where you have bad faith? Well, if you take all the inferences in favor of the insured in this case, who was the non-movement in summary judgment, then you have to question were those just blunders by the insurance company? I mean, is that the implication of your position that when you have a blundering insurance phone representative, it always results in a trial on bad faith if they say something inaccurate? Not necessarily. I don't know, but if we did a study, that would be an uncommon phenomenon. You may be right, Your Honor. I don't know. And I'm not saying that. What's the limiting principle? I think the limiting principle is when you look at the totality of the circumstances, which Aetna Insurance, the first bad faith case in Arkansas Broadway Arms, says you have to do. And when you look at that here, they affirmatively turned a blind eye to known flaws in their evaluation. They affirmatively provided false reasons for refusing to consider comparables. They affirmatively misrepresented the obligations of the insured. They affirmatively misrepresented the ability to access and provide the policy. They affirmatively misrepresented that the insured had to provide an appraisal. They affirmatively misrepresented the arbitration law. Those are the totality of the facts and circumstances. So it's not a one-off blunder. It's not an off-the-cuff inaccurate statement. It's a series of statements. And when you put those into the situational context of when they were made, for example, the appraisal, Mr. Flasco is challenging their valuation. They tell him he has to go get an appraisal if he wants to challenge the evaluation. Otherwise, take the money. That leads to a question that a reasonable juror could say, they were trying to intimidate and squeeze a settlement. Same thing on arbitration law. He was saying, pay me my undisputed amount, which you are obligated to do under Arkansas law. The answer was, not without a settlement, look at arbitration law. That situational context gives rise to a reasonable inference that a juror could make that those were not just off-the-cuff blunders. Those were strategic statements with statements of fact. Have you deposed this Adams? No, we did not depose her. She was not at the company. We could have tracked her down somewhere. She's the star witness in your trial. She could have been. Which trial do you want, right? You want a trial where she's the star witness and you say she was putting all this pressure on your client to... I want a trial where Joe Velasco is the star witness. He was the one talking to her. But will we take her deposition? We might. Well, maybe the company will need to put her on, I guess. Yeah, and that's what we actually thought might happen. But that's beside the point. The acts that USAA engaged in constitute bad faith under the law. Ignoring evidence and turning a blind eye. Cincinnati v. Mickles. Bryant v. State Farm. Sims v. State Farm. Emmanuel Baptist v. Brotherhood Mutual. They all reference that fact. Ignoring relevant information. Omitting or ignoring from the analysis Emmanuel Baptist. Misrepresenting policy terms. The arbitration imposition and the arbitration law and the appraisal imposition. State Farm v. Allen. Columbia National v. Freeman. I see I'm out of time. You are. I apologize. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course.